OPINION OF THE COURT
Guy P. DePhillips, J.
The petitioner Commissioner of Social Services as assignee of Carolyn O. filed a supplemental petition in court on August 15, 1983 alleging that respondent Leford O. violated an order of support dated June 19, 1975. It is claimed that the arrears of support owed petitioner as of the date of this supplemental petition, August 11, 1983, amount to $1,337.63. The order of support is dated June 19, 1975 and provides, inter alia, that respondent pay $45 per week effective June 21,1975 for the support of his wife (the assignor) and child by income deduction. In response to the Commissioner’s supplemental petition, respondent filed a *233 supplemental cross petition seeking suspension of the June, 1975 order of support for the period of September 24, 1977 through April 21, 1978 with vacatur of the arrears which accrued during such period. He requested relief based upon his obtaining sick leave for this period due to an accident with loss of pay from October 24,1977 through April 21, 1978.
At the hearing on the supplemental petition and cross petition, the court found as follows: respondent, a bus operator, as the result of an accident received a 40% cut in salary from October 2,1977 through October 23, 1977 and no pay from October 24, 1977 through April 21, 1978. He returned to full duty and pay on April 22, 1978.
At the time the current order of support issued (1975), section 458 of the Family Court Act provided that the “court in its discretion may cancel any and all arrears of payments.” This section was amended in 1977 to read that the “court, upon a showing of good cause, may cancel any and all arrears of payments.” (L 1977, ch 516, § 20.) A subsequent amendment in 1978 declared: “The court, absent a showing of good cause, may not cancel any or all arrears of payments. The basis for cancellation of any or all arrears shall be set forth in writing in the court record or order of cancellation” (L 1978, ch 456, § 9). These rapid amendments of the statute concerning the power of the Family Court to cancel arrears evinced dissatisfaction by the legislative branch of government with the judicial exercise of discretion in canceling arrears. Simply stated, the prevailing view was that respondents were being inappropriately excused by the court in too many instances from arrears, thereby escaping their obligations to provide support. The visiting of power (discretion) in a court with respect to cancellation of arrears and the exercise of that power (discretion) in a given set of circumstances in canceling or refusing to cancel arrears are two different subjects in logical and legal contemplation. An inappropriate exercise of discretion, i.e., one amounting to an abuse of discretion is subject to review whether by way of motion to reargue or appeal. Indeed, where such abuse of discretion is egregious and constitutes an error of law, it is reviewable and correctable upon appeal to the Court of Appeals. *234 Accordingly, a remedy always existed within the judicial branch of government for the correction of unjustified cancellation of arrears.
Analysis of case law prompts the commonsense observation that the appropriate cancellation of arrears was predicated upon good cause being advanced to justify such cancellation. Conversely, the failure to demonstrate good cause to cancel arrears did not justify cancellation, but mandated imposition of arrears. At no time during the history of the implementation of section 458 of the Family Court Act did the courts view it as a source of unbridled, unlimited discretion to cancel arrears for no reason or for any reason whether or not material and relevant to the merits of a given case. (See, e.g., Matter of Bailey v Bailey, 34 AD2d 984; see, also, Matter of Abbondola v Abbondola, 40 AD2d 976.)
Most recently, section 458 was repealed and its subject matter is now covered by the provisions of subdivisions 2 to 5 of section 455 of the Family Court Act (L 1983, ch 746). Section 455 of the Family Court Act entitled “Commitment” provides in pertinent part that where arrears have accrued, a respondent may assert as a defense to commitment to prison for his failure to obey the support order in the past, his present inability to comply with the order. However, with respect to the issue of his past inability to pay such arrears as they accrued, respondent may not raise a defense predicated on this issue unless he shows good cause for failure to make application for relief from the support order prior to the accrual of the arrears.*
The language of section 455 of the Family Court Act respecting the accrual of support arrears is echoed in subdivision 1 of section 460 of the Family Court Act, which mandates the entry of judgment for the amount of such *235 arrears “unless the defaulting party shows good cause for failure to make application for relief from the judgment or order directing such payment prior to the accrual of such arrears.” (Emphasis supplied.)
Study of the legislative history of the enactments which resulted in the repeal of section 458 of the Family Court Act and the amendments of section 455 and subdivision 1 of section 460, as above delineated, discloses, inter alia, the following argument advanced in justification: “Current support enforcement remedies place the entire burden of initiating legal action on the dependent spouse or custodial parent. The obligated spouse or parent who is financially able, but willfully defaults in payment of court-ordered support suffers no penalty, is allowed to pay the arrears in installments, or has large amounts of arrears reduced or cancelled. This relief is granted based upon assertions of current inability to pay the arrears, regardless of whether or not sufficient funds were available at the time that the payments were due.” (Memorandum of Assembly Rules Committee, A7764, ch 645, NY Legis Ann, 1980, p 256; emphasis supplied.)
Although this argument perceived the critical distinction between a party who willfully defaults in payment of court-ordered support in that he is able to pay such support as it accrues, but refused, and a party who nonwillfully defaults in such payment in that he is unable to pay such support as it accrues, the statute does not incorporate such distinction. It places both the willful party who has the ability to pay and the nonwillful party who lacks the ability to pay in the same category of defaulting party and does not permit the merits of the underlying default in payment of arrears to be reached by the court until the defaulting party advances good cause for failure to come to court prior to the accrual of arrears to seek relief from the support order. Of course, the fact that a willfully defaulting party, i.e., one who at the time the support accrued had the ability to pay, but refused, might present good cause for such failure to come to court would avail him not, because to be excused from such default he must demonstrate not only the good excuse, the good cause, for failure to come to court, but also a meritorious defense, i.e., the inability to *236 pay such support when it accrued. Common sense mandates the conclusion that the burden of being excused from accrued arrears under the present statutory framework is visited primarily upon the nonwillfully defaulting party, i.e., the one who lacked the ability to pay support as it accrued, in that in order to have a hearing on the merits of his defense to payment of arrears, he must first demonstrate good cause for his failure to come to court to seek to have the support order modified or suspended prior to the accrual of that support.
Patently the statutes (Family Ct Act, §§ 455, 460, subd 1) insofar as they require that a defaulting party, in order to be excused from accrued arrears (the equivalent of cancellation of arrears), present good cause for failure to make application for relief from the support order or judgment prior to the accrual of such arrears and a good defense to the imposition of such arrears, are constitutional. Present inability to pay the arrears while a defense to deprivation of liberty by commitment to prison for contempt of the court order of support, is not a defense to imposition of the arrears upon the defaulting party. Simply stated, the arrears vest as they become due, subject to divestiture (cancellation) only in accord with the good cause tests enumerated above — good cause for failure to come to court to seek relief from the court-ordered support prior to the accrual of arrears and good cause for the nonpayment of the arrears as they accrued.
In determining the parameters of good cause under the statute, it is noted that the respondent in effect enjoys the status of one who has defaulted and is endeavoring to set aside the default. In order to do so, he must advance a reasonable excuse for the delay in coming to court and a meritorious defense. There exists a critical, interrelationship between the excuse for the delay and the merit of the defense. As aptly noted in the seminal case of Sortino v Fisher (20 AD2d 25, 32), which involved that form of default resulting in dismissal and nonsuit for neglect to prosecute: “The affidavit of merits is important, not only to show that plaintiff has a viable cause of action, but also because the degree of merit is always revealing on whether there has been a deliberate neglect of an action of little or *237 no value, or whether the delay has another explanation * * * Given delay, [the party] has a double burden: to justify the delay and to lend credit to the proffered justification by establishing merit. It stands to reason that the greater the merit of the case the more excusable the delay and the greater would be the injustice of dismissal * * * The more slender the excuse for the delay, the greater the need to establish merit.” The commonsense rationale of Sortino is helpful in fashioning the parameters of good cause under sections 455 and 460 of the Family Court Act.
Beyond cavil, most of the respondents summoned to Family Court for support by the Commissioner of Social Services are unsophisticated, relatively poor and uneducated. The Commissioner is represented at all times by counsel whereas the vast majority of respondents act pro se. These respondents too often display ignorance of the law and in some instances unnecessary apprehension. In seeking to advance a defense to the imposition of arrears based upon lack of ability to pay due to nonwillful unemployment or decrease in wages they are confronted by the question as to why they did not come to court sooner to seek suspension or modification of the order of support. The standard answer to this query, in this court’s experience, has been either that no one advised them they had to come to court under those circumstances or that their immediate concern was the securing of gainful employment to supply the necessities of life. To both these responses, counsel for petitioner Commissioner argues that ignorance of the law is no excuse and that it was incumbent upon respondent to immediately appear in court to seek relief from the existing support order. The abstract general proposition that ignorance of the law is no excuse may not be used as a shibboleth by petitioner to evade the particular underlying equities and merits of each case wherein imposition of arrears is sought. Overtones of due process and the rationale underlying the good cause test advanced in sections 455 and 460 of the Family Court Act, as outlined above require in appropriate circumstances the excusing of arrears albeit the excuse for failure to come to court at the onset of non-self-imposed inability to pay the court directed support in whole or in part emanates from the need to supply the *238 necessities of life by finding gainful employment or a genuine lack of knowledge of the requirement to seek relief from the court at that time.
The circumstances presented in the instant proceeding are such that imposition of arrears on respondent because he failed to come to court in October, 1977, to seek relief from the order of support because of his loss of pay due to an accident, would constitute a classic example of the statutes — sections 455 and 460 of the Family Court Act — being unconstitutionally applied. There is a singular lack of grace in petitioner’s seeking to impose arrears on respondent some six years after the respondent’s failure to pay support for a relatively brief period. This lack of grace is heightened by the petitioner’s insistence, when confronted with a meritorious defense to such belated imposition of arrears, that the defense must be ignored because a recent procedural statutory charge (effective long after the date of the order of support and the period when respondent was unable to pay such support) imposes a new obstacle to consideration of the matter on the merits. The court additionally notes that petitioner’s continuing efforts to impose arrears on respondent who originally appeared herein pro se, prompted respondent to obtain private counsel. A new schedule for filing memoranda of law with respect to the issues raised herein was set up and petitioner’s counsel determined subsequently not to file a brief in accordance with such schedule.
Despite the repeal of section 458 of the Family Court Act entitled “Cancellation of arrears”, the court has inherent residual power to effect de facto cancellation of arrears in appropriate circumstances under the good cause mandate set forth in sections 455 and 460 of the Family Court Act and its continuing jurisdiction over its own support orders under section 451 of the Family Court Act.
The court has not considered the issue of whether sections 455 and 460 of the Family Court Act as recently amended retroactively apply to the respondent’s default for the period October, 1977 to April, 1978 because even assuming they so apply, respondent is entitled to suspension of the support order for such period. He presents a complete defense on the merits and a justifiable excuse *239 under the surrounding circumstances for failure to come to court at that time to seek suspension of the support order. Respondent avers and the court finds that he was never advised and did not know that it was necessary for him to come to court to seek suspension of the support order based upon his inability to pay support in order to be excused from liability for such payments. Further, respondent justifiably relied on the fact that the support payments from inception were made by payroll deduction (except for the relatively brief period of salary impairment due to an accident), as an apologia for his failure to come to court at that time.
Accordingly, in light of the aforesaid, the court grants respondent’s cross petition to the extent of suspending the order of support for the period from October 2, 1977 through April 21,1978 and denies petitioner’s supplemental petition dated August 11, 1983 alleging that respondent is in violation of the support order and seeking to impose arrears.

 Subdivision 5 of section 455 of the Family Court Act states: “Any respondent may assert his financial inability to comply with the direction contained in an order issued [for support] as a defense in a proceeding instituted against him * * * to punish him for his failure to comply with such directions and, if the court, upon the hearing of such contempt proceeding, is satisfied by competent proof that the respondent is financially unable to comply with such order * * * it may, in its discretion, until further order of the court, make an order modifying such order * * * and denying the application to punish the respondent for contempt. No such modification shall reduce or annul arrears accrued prior to the making of such application for modification unless the defaulting party shows good cause for failure to make application for relief from the order or judgment directing such payment prior to the accrual of such arrears.” (Emphasis supplied.)